UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEALER COMPUTER SERVICES, INC.; fka FORD DEALER COMPUTER SERVICES INC; dba REYNOLDS & REYNOLDS COMPANY INC; dba UNIVERSAL COMPUTER SERVICES INC, *et al*, <br><br> Plaintiffs, <br> VS. <br><br> RANDALL FORD, INC., ET AL, <br><br> Defendant. | CIVIL ACTION NO. H-08-2033 |

**OPINION & ORDER**

Pending before the Court are Randall Ford, Inc., et al's ("Randall Ford") Motion to Dismiss (Doc. 6), Dealer Computer Services, Inc.'s ("DCS") Response to Motion to Dismiss (Doc. 7), Randall Ford's Motion to Transfer Case (Doc. 8), DCS' Response to Motion to Transfer Case (Doc. 11), Randall Ford's Reply to Response to Motion to Dismiss (Doc. 13), Randall Ford's Reply to Response to Motion to Transfer Case (Doc. 14), DCS's Supplemental Response to Motion to Dismiss and Motion to Transfer Case (Doc. 17), and Randall Ford's Supplemental Brief in Support of Motion to Dismiss (Doc. 21). For the reasons articulated below, the Court ORDERS that Randall Ford's Motion to Dismiss is GRANTED WITHOUT PREJUDICE and Randall Ford's Motion to Transfer Case is DENIED as moot.

**I.      Background & Relevant Facts**

The Court must determine whether this is the appropriate time to hear DCS' motion that the Court vacate a decision by an arbitral panel that certain contracts between DCS and several car dealerships nationwide does not preclude these dealers from proceeding to class arbitration with DCS. DCS is a conglomerate that provides computer systems to car dealerships

nationwide. Doc. 1 at 4. Universal Computer Systems acquired DCS from Ford Motor Co. ("Ford") in 1992 when Ford made the decision to focus exclusively on car manufacturing and divested itself of DCS. *Id*. In 2006, DCS acquired Reynolds & Reynolds Company, Inc. ("Reynolds"), a competitor that also sold computer systems to car dealerships. *Id*. DCS does business as Reynolds but all contracts with dealers are made with DCS. *Id.* According to DCS, at the time the contracts were made it was in competition with ADP, Inc. and Reynolds, both of which held approximately 35-40% of the market. *Id*. at 5.

DCS never forthrightly states the exact nature of the contractual dispute with the car dealers. DCS alleges that upon requiring the dealers to upgrade their servers in 2006 in order to implement the annual software release, the dealers stopped performing their contracts. *Id*. at 6. It is unclear whether DCS expected or was due payment on the 2006 servers from the dealers, or received payment on them. *Id*. at 6. DCS states that the contracts provided that software upgrades were provided as part of the service contract but that the dealers were expected to pay for hardware. *Id*. at 6. In 1992, however, DCS provided an earlier server free of charge to the dealers. *Id*. at 6.

What is clear is that DCS is alleging that car dealerships nationwide breached their contracts with DCS over the same issue. On November 22, 2006, DCS filed a demand for arbitration seeking damages in excess of $660,000 from Randall Ford, one of the dealers. *Id*. at 7. In January 2007, Randall Ford filed a demand for class arbitration before a panel that was already dealing with several of the dealers ("the DMS class arbitration"). *Id*. Meanwhile, the panel for DCS's original demand for arbitration formed in June 2007 ("the Randall panel"). *Id*.

In September 2007, Randall Ford submitted a statement of counterclaims adopting the class allegations asserted in the DMS class arbitration. *Id*. The Randall panel, in November

2007, found that it "has the right to consider and decide Randall Ford's counterclaim, which is the DMS class arbitration . . . That includes all of the class certification relief in addition to the determination on the merits." *Id.* American Arbitration Association ("AAA") Supplementary Rule 3 provides that the panel determine, as a threshold matter, "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." *Id.* On June 3, 2008, the Randall panel granted a "Clause Construction Award" finding that the arbitration clauses in the contracts at issue did not preclude class certification. *Id.* 7-8.

## II.  Legal Standard on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). A plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face. *Id.* at 1974. However, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Therefore, the complaint must be liberally construed in favor of the plaintiff, all reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir.

2003). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

### III. Discussion

#### a. Motion to Vacate

DCS seeks to prevent the Randall panel from considering further whether the arbitration between DCS and Randall Ford can include other dealers from the DMS class arbitration in one class arbitration, bringing counter-claims against DCS as a class. For that purpose, DCS seeks to vacate an arbitral award (the Clause Construction Award) that determined that the arbitral clauses between DCS and the dealers applying for class certification before the Randall panel did not prevent certification. Randall Ford argues that the Court lacks jurisdiction to vacate the award because the Clause Construction Award DCS seeks to vacate is not ripe for judicial review.[1]

To determine whether claims are ripe, this Court evaluates (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007), petition for cert. filed (Fed. 25, 2008) (No. 07-1109). These prongs must be balanced, *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 296 (5th Cir. 1998), and "[a] case is generally ripe if any remaining questions are purely legal ones." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). It is fundamental, however, that "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."

---

[1] In doing so, Randall Ford relies on *Dealer Computer Servs. v. Dub Herring Ford*, 547 F.3d 558 (6th Cir. 2008), which held that identical issues involving another arbitral panel dealing with DCS and other dealers was not ripe for review. As the standard for ripeness in the Sixth Circuit is essentially identical to that in this Circuit, this Court finds *Dub Herring Ford* persuasive authority on whether the instant action is ripe for review.

*Central & South West Servs. v. United States EPA*, 220 F.3d 683, 690 (5th Cir. 2000). In this sense, the doctrines of ripeness and standing "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Texas*, 497 F.3d at 496. If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87 L. Ed. 2d 409.

The issues to be decided are purely legal ones. There is no dispute as to what language in the contracts is to be construed nor as to what role the Randall panel has played. Thus, this leans in favor of finding the case ripe for review. Even, however, where the issues are purely legal, DCS must show some immediate concrete injury. Here the Randall panel has only taken a preliminary step towards an adverse decision for DCS. When considering a demand for class arbitration, an arbitrator must determine, as a threshold matter, "[w]hether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')." Am. Arbitration Assoc., Supplementary Rules for Class Arbitrations, Rule 3, *available at* http://www.adr.org/sp.asp?id=21936 [hereinafter "Supplementary Rules"]. In its motion to vacate the Clause Construction Award, DCS argued the arbitration panel erred by interpreting the arbitration clause, found in various agreements between DCS and individual dealerships, not to preclude class arbitration of Randall Ford's contract claims. By filing this motion, DCS sought to avoid the concrete injury of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding.

Even if these concerns would ordinarily justify judicial review, DCS's motion to vacate remains unripe because the AAA panel's ruling did not conclusively determine that Randall Ford's claims should proceed as a class arbitration. The Clause Construction Award at issue

merely held that the distinct arbitration clauses in the various contracts between DCS and the dealers did not preclude class arbitration. The decision to affirmatively authorize class arbitration under the AAA rules is governed by a separate "Class Determination Award." Supplementary Rules, Rule 5(a). Those seeking class arbitration can secure a "Class Determination Award" only if they satisfy AAA class certification requirements:

> (a) Prerequisites to a Class Arbitration…
> (1) [t]he class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and (6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.
>
> (b) Class Arbitrations Maintainable.
> An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy . . . .

Supplementary Rules, Rule 4(a)-(b) (emphasis added). Given the significant hurdles posed by Rule 4, it remains far from certain that the arbitration panel will certify Randall Ford's counterclaims for class arbitration. If the panel denies class certification, the individual defendants comprising Randall Ford's putative class will be forced to separately arbitrate their claims against DCS. Thus, DCS' purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," and the claim is not ripe for adjudication. *Thomas.*, 473 U.S. at 581.

Up until this point, this Court's analysis tracks identically the resolution of the identical issues before the Sixth Circuit in *Dub Herring Ford*, 547 F.3d at 561-562 (6th Cir. 2008). DCS seeks to argue that the present case is distinguishable from *Dub Herring Ford* because Randall Ford threatens two other concrete injuries apart from the Clause Construction Award to DCS that would be immediately realized where it not for consideration of the Motion to Vacate. First, DCS argues that the Randall panel "improperly exercised jurisdiction over dealers who first filed class claims against DCS in a separate arbitration proceeding." Doc. 17 at 7. Second, DCS contends that the Randall panel lacks jurisdiction to "decide the class dispute." *Id*. DCS further states that concrete harm is threatened by "having to proceed with binding arbitration before a panel one party did not intend to adjudicate a class proceeding." *Id*. These arguments are not separable from DCS' challenge to the Clause Construction Award. Instead they are part and parcel with the Randall Panel's decision that the dealers' arbitration clauses did not preclude class arbitration. Before deciding the Clause Construction Award, the Randall panel had to exercise jurisdiction over the matter, and the parties. The same harm is threatened: that DCS may have to undergo class arbitration, and the same harm remains contingent because under AAA Supplemental Rule 4, the class still needs to be certified.

If the class is certified, DCS will have an opportunity to obtain judicial review of both the certification as well as the Clause Construction Award, and the exercise of jurisdiction over the parties and the matter by the Randall panel. Following class certification, the AAA Supplemental Rules provide for the parties to move a court to vacate the certification. When an AAA arbitration panel issues a "Class Determination Award" certifying a matter for class arbitration, the panel must stay proceedings for at least thirty-days to permit a party "to move a court of competent jurisdiction to confirm or vacate the [award]." Supplementary Rules, Rule

5(d). The stay procedures set forth in Rule 5(d) enable a party to contest an unfavorable decision on class certification in court before commencement of class arbitration and resolution of the merits by the arbitration panel. Thus, if the arbitrators in this case ultimately decide to certify Randall Ford's class, which is no certainty, Rule 5(d) would nonetheless provide DCS ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel's prior Clause Construction Award, as well as the panel's exercise of jurisdiction. Given this prospective opportunity for judicial review, it does not appear DCS will suffer any material hardship if review is withheld at this preliminary stage of arbitration.

The absence of hardship for DCS at this juncture renders DCS's motion to vacate the sort of premature adjudication the ripeness doctrine seeks to avoid. The Court should remain "reluctant to invite a judicial proceeding every time the arbitrator sneezes." *Smart v. Int'l Bhd. of Elec. Workers, Local* 702, 315 F.3d 721, 725 (7th Cir. 2002). In conclusion, the Court finds that DCS's Motion to Vacate is not ripe for judicial review.

### b.  Motion to Transfer Case

Randall Ford moves to transfer this case to the Eastern District of Michigan. There, U.S. District Judge Nancy G. Edmunds has already heard three suits involving arbitration between DCS and the dealers. Because the Court has determined that the motion to vacate is not ripe for judicial review, transferring the case is no longer an option.

Randall Ford also argues that the Court lacks subject-matter jurisdiction to hear the motion to vacate. This argument is also rendered moot as the motion is denied on ripeness grounds.

**IV.** **Conclusion**

Accordingly, it is hereby ORDERED that Defendant Randall Ford's Motion to Dismiss (Doc. 6) is GRANTED,

Furthermore, it is hereby ORDERED that Defendant Randall Ford's Motion to Transfer Case (Doc. 8) is DENIED as moot.

SIGNED at Houston, Texas, this 4th day of February, 2009.

*[signature]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE